UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MELISSA HOOKFIN, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 18-544** |
| **MORAN FOODS LLC, et al.** | **SECTION: "G"(4)** |

## ORDER AND REASONS

Before the Court is Plaintiffs Melissa Hookfin, Glen B. Hookfin, and Rakell Hookfin's (collectively, "Plaintiffs") "Motion to Remand."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion and remand this matter to the Civil District Court for the Parish of Orleans, State of Louisiana.

## I. Background

### A. *Factual Background*

On November 23, 2016, Plaintiffs allege that Melissa Hookfin was in the parking lot of the Save-A-Lot Store on Lake Forest Boulevard in Orleans Parish, Louisiana.[2] According to the petition, the Save-A-Lot store was owned by Brothers Carondelet, LLC ("Brothers") and/or Lake Forest Investments, LLC ("Lake Forest").[3] Plaintiffs assert that the Save-A-Lot Store was leased and operated by Moran Foods, LLC d/b/a Save-A-Lot, Ltd. ("Moran"), which assumed responsibility for keeping the parking lot safe and clean.[4] The petition further alleges that PL

---

[1] Rec. Doc. 10.

[2] Rec. Doc. 1-2 at 2.

[3] *Id.*

[4] *Id.*

1

Manager was the employee responsible for keeping the parking lot safe and clean.[5] According to the petition, Melissa Hookfin slipped and fell on oil in the parking lot, causing her to suffer "severe and disabling injuries to her mind and body."[6]

## B. *Procedural Background*

Plaintiffs filed this lawsuit on October 20, 2017, in the Civil District Court for the Parish of Orleans, State of Louisiana.[7] In the petition, Plaintiffs named Moran, PL Manager, Brothers, Lake Forest, and ABC Insurance Company as defendants in the suit.[8] On January 17, 2018, Moran removed the case to this Court, alleging complete diversity of citizenship and an amount in controversy exceeding $75,000.[9] In the Notice of Removal, Moran acknowledges that Brothers, Lake Forest, and PL Manager are non-diverse defendants, but it asserts that their citizenship should be disregarded for the purposes of establishing diversity jurisdiction because they were fraudulently joined as defendants in this matter.[10] Specifically, Moran asserts that it accepted responsibility under the lease to maintain the exterior facilities of the building and there is no possibility that Plaintiffs would be able to establish a cause of action against Brothers or Lake Forest.[11] Moran further asserts that PL Manager is a store manager/employee and cannot be held liable for an alleged a breach of his general administrative duties.[12] Therefore, Moran argues that

---

[5] *Id.*

[6] *Id.*

[7] *Id.* at 1.

[8] *Id.*

[9] Rec. Doc. 1.

[10] *Id.* at 3.

[11] *Id.* at 6.

[12] *Id.* at 7.

PL Manager is not a proper defendant.[13]

On February 21, 2018, Plaintiffs filed the instant motion to remand.[14] On March 5, 2018, Moran filed an opposition to the motion to remand.[15] On March 19, 2018, with leave of Court, Plaintiffs filed a reply brief in further support of the motion to remand.[16]

Following the filing of the instant motion to remand, Plaintiffs amended the petition to name Travis Smith ("Smith"), a citizen of Louisiana, in place of PL Manager as "an employee of defendants [who] was delegated the duty to inspect and clean the premises where Melissa Hookfin slipped and fell."[17] The amended petition further alleges that "Smith negligently failed in his duty to keep the parking lot area safe and clean for an unreasonable length of time when Melissa Hookfin slipped and fell, which is a proximate cause of her injuries sustained."[18]

## II. Parties' Arguments

### A. *Plaintiffs' Arguments in Support of Motion to Remand*

In the motion, Plaintiffs assert that Moran cannot meet its "heavy burden" of proving that joinder of the non-diverse defendants was improper.[19] Plaintiffs argue that the fact that the lease states that Moran "shall be responsible for the maintenance of the parking lot" does not mean that Brothers or Lake Forest were absolved of responsibility as the owner for maintenance of the

---

[13] *Id.* at 7.

[14] Rec. Doc. 10.

[15] Rec. Doc. 15.

[16] Rec. Doc. 24.

[17] Rec. Doc. 34 at 1–2.

[18] *Id.* at 2.

[19] Rec. Doc. 10-1 at 2.

3

parking lot, especially if Moran failed to properly do so.[20] Plaintiffs contend that the public is exposed to whatever dangerous conditions exist on that parking lot and the owner of the lot is aware of and financially benefitting from the customers' use of the lot.[21] Therefore, Plaintiffs assert that Brothers and/or Lake Forest "is still ultimately still [sic] subject to liability for injury to individuals on the premises and maintenance of the lot and cannot delegate that duty."[22]

Plaintiffs also argue that PL Manager is properly joined as a Defendant.[23] Plaintiffs assert that they submitted interrogatories to Moran before this case was removed to determine the identity of the employee responsible for the cleaning and maintenance of the parking lot, and they will name PL Manager as soon as the response is received.[24] Plaintiffs contend that Louisiana law permits an employee of a corporation, who through his fault injures another person to whom he owes a personal duty, to be held personally liable to the injured party, regardless of whether the corporation is also liable.[25] Plaintiffs note that the Louisiana Supreme Court enumerated four factors for finding an employee personally liable for a corporation's negligence: (1) the employer owes a duty to a third person; (2) the duty was delegated by the employer to an employee; (3) the employee breached the duty through personal fault; and (4) the employee personally knows or personally should know of its non-performance or malperformance and failed to cure the risk of

---

[20] *Id.* at 3.

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 4 (citing *Canter v. Koehring*, 281 So. 2d 716 (La. 1973)).

4

harm.²⁶ Here, Plaintiffs assert that PL Manager was instructed to maintain the parking lot and keep it safe and clean.²⁷ Therefore, Plaintiffs maintain that the negligence of PL Manager caused Melissa Hookfin to suffer injuries.²⁸ Accordingly, Plaintiffs contend that Moran has failed to demonstrate that there is "[a]bsolutely no possibility that the plaintiff will be able to establish a cause of action against the party in state court" and this matter should be remanded to state court.²⁹

### B.   *Moran's Arguments in Opposition to the Motion to Remand*

In opposition, Moran maintains that Brothers, Lake Forest, and PL Manager are not properly joined as defendants; therefore, only Moran's citizenship should be considered for the purposes of establishing diversity jurisdiction.³⁰ Moran asserts that Plaintiffs will be unable to establish a cause of action against Brothers and Lake Forest because under the lease Moran accepted responsibility for maintaining the exterior facilities.³¹ Moran notes that Plaintiffs argue that Brothers and Lake Forest are liable to Plaintiffs simply because they own the property, but Moran points out that Plaintiffs cite no authority to support this assertion.³² To the contrary, Moran contends that under Louisiana law, a lease may establish that the lessee be responsible for certain repairs and maintenance.³³ Because Moran accepted responsibility under the lease to maintain the

---

²⁶ *Id.* (citing *Canter*, 281 So. 2d at 716).

²⁷ *Id.*

²⁸ *Id.* at 4–5.

²⁹ *Id.* at 5 (quoting *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)).

³⁰ Rec. Doc. 15 at 1.

³¹ *Id.* at 2.

³² *Id.*

³³ *Id.* (citing La. Civ. Code art. 2691; *Houma Oil Co., Inc. v. McKey*, 395 So. 2d 828 (La. App. 1 Cir. 1981)).

5

exterior facilities, Moran contends that Plaintiffs will be unable to establish a cause of action against Brothers or Lake Forrest for the alleged presence of oil in the parking lot.[34]

Moran also argues that PL Manager is not properly joined as a defendant.[35] Moran contends that an employee cannot be personally liable under Louisiana law simply because of "his general administrative responsibility for performance of some function of the employment."[36] Moran notes that Plaintiffs allege that PL Manager is liable for failing to keep the parking lot clean, which Moran contends is a part of PL Manager's general administrative responsibilities.[37] Therefore, Moran argues that the motion to remand should be denied because the non-diverse defendants are improperly joined in this matter.[38]

### C. *Plaintiffs' Arguments in Further Support of Motion to Remand*

In the reply brief, Plaintiffs again assert that Brothers and Lake Forrest are properly named as defendants in this matter.[39] Plaintiffs cite Louisiana Revised Statute § 9:3221, which provides that the owner of a leased premises where the lessee assumes responsibility for the condition of the premises shall not be liable "for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable

---

[34] *Id.*

[35] *Id.*

[36] *Id.* (citing *Canter*, 281 So. 2d at 721).

[37] *Id.* at 3.

[38] *Id.*

[39] Rec. Doc. 24 at 1.

6

time."[40] Plaintiffs assert that Moran has not shown that Brothers and Lake Forest did not know or should not have known that the oil spills occurred in the parking lot, as the spills were open and obvious.[41] Furthermore, Plaintiffs contend that Melissa Hookfin did not necessarily derive her right to be in the parking lot from the lease because the lot is open to the public.[42] Therefore, Plaintiffs argue that Brothers and Lake Forest could be liable under Louisiana Revised Statute § 9:3221.[43]

Next, Plaintiffs contend that PL Manager is properly joined as a defendant in this matter.[44] Plaintiffs acknowledge that a general manager may not be held personally liable for an injury merely because of his general administrative responsibility for maintenance of the store.[45] However, Plaintiffs contend that they are suing the specific employee who was responsible for maintaining the parking lot and keeping it safe.[46]

Finally, Plaintiffs assert that Moran's removal of this matter was premature because no motions have been filed seeking dismissal of the non-diverse defendants, and the defendants have not answered discovery requests submitted by Plaintiffs.[47] For these reasons, Plaintiffs assert that the motion to remand should be granted.[48]

---

[40] *Id.*

[41] *Id.* at 2.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.* at 3.

## III. Legal Standard

A defendant may remove a state civil court action to federal court if the federal court has original jurisdiction over the action.[49] A federal court has subject matter jurisdiction over an action "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between citizens of different states."[50] The removing party bears the burden of demonstrating that federal jurisdiction exists.[51] Subject matter jurisdiction is fixed at the time of removal, and it cannot be eliminated by events that occur after removal.[52] The removal statute, 28 U.S.C. § 1441(b), states that "[i]n determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."

In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that "removal statute[s] should be strictly construed in favor of remand."[53] Remand is appropriate if the Court lacks subject matter jurisdiction, and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[54] Moreover, 28 U.S.C.

---

[49] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

[50] 28 U.S.C. § 1332(a)(1).

[51] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[52] *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").

[53] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[54] *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988)).

§ 1447(c) states: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

In this case, complete diversity of citizenship is lacking on the face of the state court petition because Plaintiffs, Brothers, Lake Forest, and PL Manager are citizens of Louisiana. Despite the presence of non-diverse defendants in this lawsuit, Moran argues that this Court has diversity jurisdiction because Plaintiffs have improperly joined the non-diverse defendants in order to defeat diversity jurisdiction.

"The fraudulent joinder doctrine ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity."[55] The party asserting fraudulent joinder "bears a heavy burden of proving that joinder of the in-state party was improper."[56] The Fifth Circuit has long recognized two methods of fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, and (2) the inability of the plaintiffs to plead a cause of action against the non-diverse defendants in state court.[57] In this case, Moran alleges that Brothers, Lake Forest, and PL Manager fraudulently joined because Plaintiffs cannot plead a cause of action against them.

In *Smallwood v. Illinois Central Railroad Co.*, the Fifth Circuit stated that "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is

---

[55] *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (internal citations omitted).

[56] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

[57] *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (internal citations omitted). The Fifth Circuit also refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term "fraudulent joinder" is still used in many Fifth Circuit cases. *See, e.g., Crockett*, 436 F.3d 532. In this Order, the Court will use both terms.

9

no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[58] District courts may assess whether a plaintiff has "a reasonable basis of recovery under state law" in either of two ways.[59] First, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[60] Second, in rare cases, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[61]

If a court decides to "pierce the pleadings" when assessing a claim of fraudulent joinder, it may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff," and resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor.[62] However, a court does not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[63] In other words, where courts choose to pierce the pleadings, the party asserting fraudulent joinder must provide evidence that "negate[s] the

---

[58] *Smallwood*, 385 F.3d at 573.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003)

[63] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005).

10

possibility" that the non-diverse party may be held liable.[64] The Fifth Circuit has stated that district court should look at summary judgment-type evidence at this stage of the proceedings only in those cases, "hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder."[65] Even in such cases, the district court's decision to pierce the pleadings and conduct a summary inquiry is within in its discretion.[66]

## IV. Analysis

In the Notice of Removal, Moran acknowledges that Brothers, Lake Forest, and PL Manager are non-diverse defendants, but it asserts that their citizenship should be disregarded for the purposes of establishing diversity jurisdiction because they were improperly joined as defendants in this matter.[67] In the motion to remand, Plaintiffs argue that they have stated a claim against both the alleged owners of the building, Brothers and Lake Forest, and the manager of the parking lot.[68] Accordingly, the Court addresses each of these issues in turn.

*A.     Whether Brothers and Lake Forest are Improperly Joined*

In the motion to remand, Plaintiffs acknowledge that the lease states that Moran "shall be responsible for the maintenance of the parking lot," but Plaintiffs contend that this does not mean that Brothers or Lake Forest were absolved of responsibility as the owner for maintenance of the

---

[64] *Travis*, 326 F.3d at 650.

[65] *Smallwood*, 385 F.3d at 573.

[66] *Id.*

[67] Rec. Doc. 1.

[68] Rec. Doc. 10.

11

parking lot.[69] In opposition, Moran contends that because it accepted responsibility under the lease to maintain the exterior facilities Plaintiffs will be unable to establish a cause of action against Brothers and Lake Forrest for the alleged presence of oil in the parking lot.[70] In the reply brief, Plaintiffs assert that Brothers and Lake Forrest can be held liable under Louisiana law because Moran has not shown that Brothers and Lake Forest did not know or should not have known that the oil spills occurred in the parking lot, as the spills were open and obvious.[71] Furthermore, Plaintiffs contend that Melissa Hookfin did not necessarily derive her right to be in the parking lot from the lease because the lot was open to the public.[72] Therefore, Plaintiffs argue that Brothers and Lake Forest could be liable under Louisiana Revised Statute § 9:3221.[73]

> Louisiana Civil Code article 2691 provides that:
>
> During the lease, the lessor is bound to make all repairs that become necessary to maintain the thing in a condition suitable for the purpose for which it was leased, except those for which the lessee is responsible.

Pursuant to Louisiana Revised Statute § 9:3221, "the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time." Louisiana courts have recognized that the statute "was undoubtedly designed to relieve the owner of some of the burdens imposed upon him by law

---

[69] Rec. Doc. 10-1 at 3.

[70] Rec. Doc. 15 at 2.

[71] Rec. Doc. 24 at 2.

[72] *Id.*

[73] *Id.*

12

in cases where he had given dominion or control of his premises to a tenant under a lease."[74] "To establish liability on the part of a lessor who has passed on responsibility for the condition of his property to his lessee under [Section] 9:3221, a plaintiff must establish that (1) he sustained damages; (2) there was a defect in the property; and (3) the lessor knew or should have known of the defect."[75]

In this case, Plaintiffs do not dispute that Moran accepted responsibility under the lease to maintain the exterior facilities where Melissa Hookfin fell. Plaintiffs allege that Melissa Hookfin "slipped on oil left in the parking lot either put there by the defendants or left for an unreasonable length of time, before it was cleaned up."[76] Plaintiffs contend that Brothers and Lake Forrest could be held liable under Louisiana law because Moran has not shown that Brothers and Lake Forest did not know or should not have known that the oil spills occurred in the parking lot, as the spills were open and obvious.[77] Furthermore, Plaintiffs contend that Melissa Hookfin did not necessarily derive her right to be in the parking lot from the lease because the lot was open to the public.[78] Moran does not respond to these arguments or present any evidence to show that Brothers and Lake Forest were not aware of the oil spills or should not have been aware of the spills. Therefore, Moran has failed to demonstrate that there is no possibility that Plaintiffs could recover against Brothers and Lake Forest.[79] Accordingly, Moran has not met its "heavy burden" of proving that

---

[74] *Jamison v. D'Amico*, 06-842 (La. App. 4 Cir. 3/14/07); 955 So. 2d 161, 166 (internal citations omitted).

[75] *Id.*

[76] Rec. Doc. 1-2 at 2.

[77] Rec. Doc. 24 at 2.

[78] *Id.*

[79] *Smallwood*, 385 F.3d at 573.

13

joinder of Brothers and Lake Forest was in fact improper.[80]

### B. *Whether the Parking Lot Manager was Improperly Joined*

Plaintiffs argue that PL Manager is properly joined as a defendant because Moran delegated the responsibility for maintaining the parking lot and keeping it safe to PL Manager.[81] In opposition, Moran contends that the parking lot manager cannot be held liable under Louisiana law for failing to keep the parking lot clean because those were part of his general administrative responsibilities.[82]

As an initial matter, the Court notes that PL Manager is a fictitious defendant. Pursuant to 28 U.S.C. § 1441(a), "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." However, Section 1447(e) allows joinder and remand to state court if, after removal, "the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction." In *Doleac ex rel Doleac v. Michalson*, the Fifth Circuit held that the removal statute's prohibition against considering John Doe defendants for diversity purposes applied only to "John Doe defendants as such, not to subsequently named parties identifying one of those fictitious defendants."[83]

Following the filing of the instant motion to remand, Plaintiffs amended the petition to name Smith, a citizen of Louisiana, in place of PL Manager as "an employee of defendants [who] was delegated the duty to inspect and clean the premises where Melissa Hookfin slipped and

---

[80] *Id.* at 574.

[81] Rec. Doc. 10-1 at 3.

[82] Rec. Doc. 15 at 3.

[83] 264 F.3d 470, 475 (5th Cir. 2001).

14

fell."[84] The amended petition further alleges that "Smith negligently failed in his duty to keep the parking lot area safe and clean for an unreasonable length of time when Melissa Hookfin slipped and fell, which is a proximate cause of her injuries sustained."[85] Therefore, the Court will consider Smith's citizenship in deciding whether remand is appropriate.

It is a well-settled principle of law in Louisiana that "if an employee of a corporation through his or her fault injures a party to whom he owes a personal duty, whether or not the act culminating in the injury is committed by or for the corporation, the employee is liable personally to the injured third person; it does not matter that liability might attach to the corporation."[86] In *Canter v. Koehring* the Louisiana Supreme Court held that an employee can be held personally liable for an injury if the following criteria is satisfied: (1) the employer must owe a duty of care to the third person; (2) this duty is delegated by the employer to the particular employee; (3) the employee breached this duty through his fault; and (4) the employee had a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damage.[87] However, "personal liability cannot be imposed upon the [] employee simply because of his general administrative responsibility for performance of some function of the employment."[88]

In *Ford v. Elsbury*, the Fifth Circuit considered whether the plant manager of a factory where the plaintiffs were injured by an explosion was fraudulently joined, or whether the plaintiffs

---

[84] Rec. Doc. 34 at 1–2.

[85] *Id.* at 2.

[86] *Wallace v. Upjohn Co.*, 535 So. 2d 1110, 1117 (La. App. 1 Cir. 1988).

[87] *Canter*, 281 So. 2d at 716.

[88] *Id.*

15

had shown a possibility of prevailing against him.[89] The Fifth Circuit noted that a key issue in deciding whether there was a possibility of the plant manager's personal liability was whether the plant manager "was aware or should have been aware of a risk of harm and nevertheless failed to respond to the risk in the manner in which a reasonably prudent plant manager would respond in the same or similar circumstances."[90] The court explained that "[a] supervisor's knowledge of the dangers present 'could give rise to the personal duty contemplated in *Canter*.'"[91] Considering that there were several affidavits and deposition testimony that indicated it was likely that the plant manager knew of the dangerous condition, the Fifth Circuit reversed the district court's determination that the plant manager was fraudulently joined.[92]

Here, Plaintiffs allege that Moran delegated to Smith "the duty to inspect and clean the premises where Melissa Hookfin slipped and fell."[93] Plaintiffs further allege that "Smith negligently failed in his duty to keep the parking lot area safe and clean for an unreasonable length of time when Melissa Hookfin slipped and fell, which is a proximate cause of her injuries sustained."[94] Like in *Ford*, Plaintiffs allege that Smith was aware or should have been aware of a risk of harm because he negligently failed to keep the area clean for an unreasonable length of time. Moreover, Moran does not present any evidence to rebut these allegations. Therefore, Moran

---

[89] 32 F.3d 931, 935 (5th Cir. 1994).

[90] *Id.* at 936.

[91] *Id.*

[92] *Id.* at 939.

[93] Rec. Doc. 34 at 1–2.

[94] *Id.* at 2.

has failed to demonstrate that there is no possibility that Plaintiffs could recover against Smith.[95] Accordingly, Moran has not met its "heavy burden" of proving that joinder of Smith was in fact improper.[96]

### V. Conclusion

On a motion to remand based on fraudulent joinder, the Court cannot assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[97] Furthermore, all "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[98] Considering that it is not clear that Plaintiffs will be unable to prevail on their claims against the non-diverse defendants, Brothers, Lake Forrest, and Smith, the Court lacks subject matter jurisdiction over this case and must remand it to the state court from which it was removed.

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion to Remand"[99] is **GRANTED** and this matter is remanded to the Civil District Court for the Parish of Orleans, State of Louisiana.

**NEW ORLEANS, LOUISIANA**, this __3rd__ day of August, 2018.

                                                             *Nannette Jolivette Brown*
                                                             **NANNETTE JOLIVETTE BROWN**
                                                             **CHIEF JUDGE**
                                                             **UNITED STATES DISTRICT COURT**

---

[95] *Smallwood*, 385 F.3d at 573.

[96] *Id.* at 574.

[97] *Guillory*, 434 F.3d at 308–09.

[98] *Acuna*, 200 F.3d at 339.

[99] Rec. Doc. 10.